## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RSUI INDEMNITY COMPANY, | ) | FILED: JULY 9, 2008 |
| | ) | 08CV3893 |
| Plaintiff, | ) | JUDGE GRADY |
| | ) | MAGISTRATE JUDGE ASHMAN |
| v. | ) No.: | |
| | ) | |
| CAZIM, INC. d/b/a LITTLE RASCALS | ) | PH |
| And ARTUR KUSTOSZ, | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, RSUI INDEMNITY COMPANY ("RSUI"), by and through its

undersigned counsel, and pursuant to 28 U.S.C. §2201, 2202 and Rule 57 of the Federal Rules of

Civil Procedure, files its Complaint for Declaratory Judgment against Defendant, CAZIM, INC.

d/b/a LITTLE RASCALS ("Cazim") and ARTUR KUSTOSZ ("Kustosz") and states as follows:

### Parties and Jurisdiction

1.      Plaintiff, RSUI, is a corporation organized and existing under the laws of the

State of New Hampshire, with its principal place of business in Atlanta, Georgia.

2.      Defendant, Cazim, is a corporation organized and existing under the laws of the

State of Illinois, with its principal place of business at 4356 West Belmont in Chicago, Illinois.

3.      Defendant, Kustosz, is a resident of the State of Illinois.  Kustosz is joined as

defendant herein solely in order to be bound by the judgment entered in this cause.  However, if

Kustosz agrees and stipulates to be bound by the judgment rendered herein, then RSUI will

voluntarily dismiss him as a defendant.

4.    Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), because plaintiff and defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.    RSUI brings this action to obtain certain declarations with respect to the duty to defend and indemnify Cazim in connection with a lawsuit styled *Artur Kustosz v. Cazim, Inc. D/B/A Little Rascals*, Case No. 2008 L 006014 ("Kustosz Suit") filed in the Circuit Court of Cook County, Illinois.  (A copy of the Kustosz Suit is attached hereto as Exhibit "A").

6.    An actual controversy exists between the Plaintiff, RSUI, and the Defendant, Cazim, because Cazim, has sought insurance coverage from RSUI in connection with the Kustosz Suit and RSUI contests insurance coverage for Cazim.

7.    By the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such relief as it deems necessary under the facts and circumstances.

**The Kustosz Suit**

8.    Kustosz filed his Complaint at Law in the Kustosz Suit on June 3, 2008.

9.    The Kustosz Suit involves an alleged assault and battery between patrons of Cazim, a tavern selling alcoholic liquors to the public at 4356 West Belmont in Chicago, Illinois.

10.    The Kustosz Complaint brings two causes of action against Cazim: Liability pursuant to 235 ILCS 5/6-21 (the Dram Shop Act) and liability due to negligence.

11.    The Kustosz Complaint alleges that on June 12, 2007, Cazim sold alcoholic liquors to a patron by the name of "Krzysztof" who consumed the liquors, became intoxicated and "attacked, assaulted, battered, beat, bloodied, and severely injured" Kustosz.

12.     The Kustosz Complaint alleges that Cazim was negligent in that it failed to properly train and/or instruct its employees, bartenders, security, and bouncers, allowed Krzysztof admittance to the premises and allowed him to consume alcoholic liquors when Cazim knew or should have known of Krzysztof's dangerous propensities, failed to properly respond to Krzysztof's assault and battery of Kustosz, failed to provide properly trained personnel for the safety of its patrons and conflict resolution, failed to prevent Krzsztof from harming its patrons, and failed to exercise reasonable care in the employment of its personnel.

### The RSUI Policy

13.     RSUI issued a Liquor Liability Policy No. NLL001406 to Cazim for the policy period of August 15, 2006 to August 15, 2007 ("RSUI Policy").  (A copy of the RSUI Policy is attached hereto as Exhibit "B").

14.     Defendant, Cazim, is a named insured under the RSUI Policy.

15.      RSUI has advised Cazim that it contends that no coverage is afforded for it under the RSUI Policy for the allegations contained in the Kustosz Suit.

### COUNT I
### Assault and Battery Exclusion

16.     Plaintiff hereby incorporates the allegations contained in the preceding paragraphs, as if more fully set forth herein.

17.     The RSUI Policy has an Endorsement titled "EXCLUSION – ASSAULT AND BATTERY" which excludes coverage for the following under the RSUI Policy:

> 1. Claims to recover damages arising from actual or alleged **assault** and/or **battery** and **claims** for false arrest, false detention or false imprisonment, where such false arrest, false detention or false imprisonment is connected to or arises in the sequence or events related to actual or alleged **assault** and/or **battery**, are excluded from coverage, and we are under no duty to defend or indemnify the insured regardless of the degree of culpability or intent and without regard to:

3

    a.  Whether the acts are alleged to be by or at the instruction or at the direction of the insured, the insured's officers, **employees**, agents or servant; or by any other person lawfully or otherwise on, at or near premises owned or occupied by the insured; or by any other person;

    b.  The alleged failure or fault of the insured, or the insured's officers, **employees**, agent or servants, in the hiring, supervision, retention or control of any person whether or not an officer, employee, agent or servant of the insured;

    c.  The alleged failure or fault of the insured, or the insured's officers, **employees**, agents or servants, to attempt to prevent, bar or halt any such conduct.

2.  Additionally, this exclusion applies to any **claim** by any other person, firm or organization, asserting rights derived from, or contingent upon, any person asserting a **claim** excluded under paragraphs 1.a. through 1.c. above. In addition, this endorsement specifically excludes from coverage **claims** for:

    a.  Emotional distress, or for loss of society, services, consortium and/or income;

    b.  Reimbursement for expenses (including but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm or organization;

    c.  Any obligation to share damages with or repay someone who must pay damages because of the injury; all arising from actual or alleged **assault** and/or **battery** (hereinafter the "Assault and Battery Exclusion").

18.    The Assault and Battery Exclusion defines "Assault" as follows: the apprehension of harmful or offensive contact between or among two or more persons by threats through words or deeds.

19.    The Assault and Battery Exclusion defines "Battery" as follows: the harmful or offensive contact between or among two or more persons.

20.     The Kustosz Suit alleges both "Assault" and "Battery" as defined by the RSUI Policy.

21.     The RSUI Policy excludes from coverage "Claims to recover damages arising from actual or alleged **assault** and/or **battery**" without regard to any "alleged failure or fault of the insured . . . in the hiring, supervision, retention or control of any person whether or not an officer, employee, agent or servant of the insured" and any "alleged failure or fault of the insured . . . to attempt to prevent, bar or halt any such conduct."

22.     Because the Kustosz Suit seeks recovery for assault and battery which is excluded under the Assault and Battery Exclusion, RSUI owes no duty to defend or indemnify Cazim for the Kustosz Suit.

WHEREFORE, the Plaintiff, RSUI INDEMNITY COMPANY, prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the RSUI Policy, together with the following relief:

     a.     That this Court find and declare that RSUI Indemnity Company has no duty to defend or indemnify Cazim, Inc. d/b/a Little Rascals in connection with the Kustosz Suit;

     b.     That this Court grant Plaintiff its costs of this action; and

     c.     That this Court grant such other and further relief as it deems just and equitable.

Respectfully Submitted,

RSUI INDEMNITY COMPANY,

By: _____
     One of its attorneys

5

Michael S. Knippen, Esq.
(mike.knippen@brg-law.net)
James M. Eastham, Esq.
(james.eastham@brg-law.net)
Jocelyn P. Jopa, Esq.
(jocelyn.jopa@brg-law.net)
BOLLINGER, RUBERRY & GARVEY
500 West Madison Street, Suite 2300
Chicago, Illinois 60661
Telephone:  (312) 466-8000
Facsimile:  (312) 466-8001

JUDGE GRADY
MAGISTRATE JUDGE ASHMAN

PH

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

ARTUR KUSTOSZ,                          )
                                        )
    Plaintiffs,                         )
                                        )
    v.                                  )      No.
                                        )
CAZIM, INC., D/B/A LITTLE RASCALS,      )
                                        )
    Defendants,                         )

## COMPLAINT AT LAW

NOW COMES the Plaintiff, ARTUR KUSTOSZ, by and through his attorneys,

KURASCH & KLEIN, LTD., and complaining of the Defendants, CAZIM, INC., D/B/A

LITTLE RASCALS, and state as follows:

## COUNT I

1.    On June 12, 2007, and all relevant times, Defendants, CAZIM, INC., D/B/A

LITTLE RASCALS owned, operated, managed, maintained, or otherwise controlled the premises

located at 4356 W. Belmont, Chicago, Illinois, County of Cook, commonly known as CAZIM,

INC., D/B/A LITTLE RASCALS, Chicago, Illinois, County of Cook.

2.    That at all relevant times defendants held themselves out to be in the bar, tavern,

and/or restaurant business serving, selling, or giving food and alcoholic liquors to the public at

4356 W. Belmont, Chicago, Illinois, County of Cook.

3.    That at all relevant times, Defendants, had knowledge that alcoholic liquors were sold

there and either directly or by and through its duly authorized agents, employees, and servants acting

on its behalf, did sell and dispense or otherwise give alcoholic liquors to a patron by the name of

"Krzysztof"(hereafter KRZYSZTOF), on the premises, who consumed these liquors on the above

1

premises.

4.     That at all relevant times, the alcoholic liquors consumed by KRZYSZTOF, caused his intoxication, and while intoxicated and as a result of the intoxication defendant KRZYSZTOF attacked, assaulted, battered, beat, bloodied, and severely injured the plaintiff.

5.     That on said date, the Plaintiff ARTUR KUSTOSZ, was lawfully at the defendants' premises known as CAZIM, INC., D/B/A LITTLE RASCALS, and was in the exercise of due care and caution for his own safety and for the safety of others.

6.     That on the date set out above, Plaintiff, ARTUR KUSTOSZ, took no action to provoke the above assault and battery.

7.     That as a direct and proximate result of the above-described intoxication of the KRZYSZTOF, Plaintiff suffered and will suffer pain, was seriously and permanently injured, disabled from his normal life, and disfigured, when said intoxicated patron unlawfully assaulted and struck Plaintiff.

8.     Thus, as a direct and proximate result of the aforesaid, the Plaintiff, ARTUR KUSTOSZ, sustained serious and permanent injuries and scars, and as a result has been compelled to expend and to become legally liable for large sums of money for medical services for hospital, medical, and surgical expenses for treatment in attempting to become healed of his injuries, and he was prevented from attending to his usual employment, affairs and duties, and has thereby lost large sums of money which otherwise would have accrued to him.

9.     This action is brought pursuant to, 235 ILCS 5/6-21, Dram Shop Act commonly known as the Dramshop Act.

WHEREFORE, the Plaintiff, ARTUR KUSTOSZ, prays for judgment against the

2

Defendants, CAZIM, INC., D/B/A LITTLE RASCALS, in an amount in excess of FIFTY

THOUSAND ($50,000) DOLLARS.

### COUNT II

1.      On June 12, 2007, and all relevant times, Defendants, CAZIM, INC., D/B/A

LITTLE RASCALS owned, operated, managed, maintained, or otherwise controlled the premises

located at 4356 W. Belmont, Chicago, Illinois, County of Cook, commonly known as CAZIM,

INC., D/B/A LITTLE RASCALS, Chicago, Illinois, County of Cook.

2.      That at all relevant times defendants held themselves out to be in the bar, tavern,

and/or restaurant business serving, selling, or giving food and alcoholic liquors to the public at

4356 W. Belmont, Chicago, Illinois, County of Cook.

3.      That at all relevant times, said Defendants, had knowledge that alcoholic liquors were

sold there and either directly or by and through its duly authorized agents, employees, and servants

acting on its behalf, did sell and dispense or otherwise give alcoholic liquors to KRZYSZTOF, on

the premises, who consumed these liquors on the above premises.

4.      That at all relevant times, the alcoholic liquors consumed by KRZYSZTOF, caused

his intoxication, and while intoxicated and as a result of the intoxication defendant KRZYSZTOF

attacked, assaulted, battered, beat, bloodied, and severely injured the plaintiff.

5.      That KRZYSZTOF was known to defendant CAZIM, INC., D/B/A LITTLE

RASCALS by an through defendant's employees, agents, assigns, to be a person with violent

tendencies and as a person who had previously caused trouble, disturbances, fights, and injuries to

members of the public and properties.

6.      That defendant CAZIM, INC., D/B/A LITTLE RASCALS , by and through its

3

employees, agents, assigns, and bouncers gave and/or sold the KRZYSZTOF alcoholic liquors to consume, and despite the actual or constructive knowledge of KRZYSZTOF's dangerous propensities, allowed with their knowledge, instruction, and/or consent, KRZYSZTOF to have admission to the premises and to consume alcoholic liquors.

7.      That on said date, the Plaintiff ARTUR KUSTOSZ, was lawfully at the defendant's CAZIM, INC., D/B/A LITTLE RASCALS premises and was in the exercise of due care and caution for his own safety and for the safety of others.

8.   That on the date set out above, Plaintiff, ARTUR KUSTOSZ, took no action to provoke the above assault and battery.

9.      That at all relevant times, the Defendant, CAZIM, INC., D/B/A LITTLE RASCALS had a duty to provide for and ensure the safety of the Plaintiff.

10.      That at all relevant times, the Defendant, CAZIM, INC., D/B/A LITTLE RASCALS had a duty to provide trained employees, security staff, bartenders serve patrons responsibly within the law and to protect the public and in particular the Plaintiff.

11.      That on June 12, 2007, and all relevant times, the Defendants, CAZIM, INC., D/B/A LITTLE RASCALS had a duty to exercise reasonable care in the employment of its employees, staff, bartenders, assigns, and others acting in their behalf or on the color of their authority.

12.      That nevertheless, in disregard of those duties, on the aforementioned date and time, while the Plaintiff was lawfully on the premises of Defendant CAZIM, INC., D/B/A LITTLE RASCALS, acting through its employees, agents, and/or assigns was then and there guilty of one or more of the following negligent acts or omissions:

> a.  Failed to properly train and/or instruct the employees, bartenders, security, bouncers in performing their duties;

4

    b.  Allowed KRZYSZTOF to consume alcoholic liquors when defendant knew or should have know of KRZYSZTOF'S dangerous propensities;

    c.  Allowed KRZYSZTOF admission to the premises when defendant knew or should have know of KRZYSZTOF'S dangerous propensities;

    d.  Failed to properly respond to KRZYSZTOF'S assault and battery of the plaintiff;

    e.  Failed to provide properly trained personnel for the safety of its patrons;

    f.  Failed to prevent KRZYSZTOF from harming its patrons;

    g.  Failed to train its personnel in conflict resolution procedures;

    h.  Failed to exercise reasonable care in the employment of its personnel;

13.    That as a direct and proximate result of the negligence of the defendant, the Plaintiff ARTUR KUSTOSZ suffered and will suffer pain, was seriously and permanently injured and disabled from his normal life and disfigured.

14.    Thus, as a direct and proximate result of the aforesaid, the Plaintiff, sustained serious and permanent injuries and scars, and as a result has been compelled to expend and to become legally liable for large sums of money for medical services for hospital, medical, and surgical expenses for treatment in attempting to become healed of his injuries, and he was prevented from attending to his usual employment, affairs and duties, and has thereby lost large sums of money which otherwise would have accrued to him.

WHEREFORE, the Plaintiff, ARTUR KUSTOSZ, prays for judgment against the Defendants, CAZIM, INC., D/B/A LITTLE RASCALS, in an amount in excess of FIFTY THOUSAND ($50,000) DOLLARS.

KURASCH & KLEIN, LTD.

By:                     
                Daniel A. Klein

#38516
KURASCH & KLEIN, LTD.
100 N. LaSalle St, Suite 2005
Chicago, Illinois 60602
(312) 372-7250

5

06/25/2008 13:43 FAX                                                      Ø009/009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

ARTUR KUSTOSZ,                    )
                                  )
        Plaintiffs,               )
                                  )
    v.                            )          No,
                                  )
CAZIM, INC., D/B/A LITTLE RASCALS, )
                                  )
        Defendants.               )

### AFFIDAVIT PURSUANT TO RULE 222(b)

I, DANIEL A. KLEIN, being first duly sworn and upon my oath states as follows:

1.      I am the attorney for plaintiff, ARTUR KUSTOSZ.

2.      That the total of money damages sought does exceed FIFTY THOUSAND ($50,000.00) DOLLARS.

Further affiant sayeth not.

By: _____
                                        Daniel A. Klein

Subscribed and sworn to before
me this 2nd day of June , 2008

_____
Notary Public

**OFFICIAL SEAL**
**AGATA WOZNY**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 6-8-2011

**KURASCH & KLEIN, LTD.**
Attorneys for Plaintiff
100 N. LaSalle Street
Suite 2005
Chicago, Illinois 60602
(312) 372-7250

08CV3893
JUDGE GRADY
MAGISTRATE JUDGE ASHMAN

PH

# *Liquor Liability Policy*

## CLAIM OFFICE:

**Mail claims to:**
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA  30326-1160

**Fax claims to:**
(404) 260-3934
(Attn: Claims Department)

LLG 30102 1106

Your policy has been signed on our behalf by our President and by our Secretary and Treasurer.  However, your policy will not be binding on us unless it is also countersigned by one of our duly authorized agents.

President

**RSUI Indemnity Company**
**Landmark American Insurance Company**

Secretary

**RSUI Indemnity Company**
**Landmark American Insurance Company**


A member of Alleghany Insurance Holdings LLC

LLG 30102 1106

**Jackson, Leah**

| | |
|---|---|
| **From:** | Hilda Delgado [hdelgado@gfbgroup.com] |
| **Sent:** | Thursday, August 23, 2007 10:38 AM |
| **To:** | Jackson, Leah |
| **Subject:** | NLL001406-Cazim, Inc. |

**Attachments:** SCAN8662_000.pdf



SCAN8662_000.pdf
(517 KB)

      Hi Leah ,

Attached is a copy of the policy for the above referenced insured.
Please advise if anything else is needed.


-----Origina <<SCAN8662_000.pdf>> l Message-----
From: GFBScan@gfbgroup.com
Sent: Thursday, August 23, 2007,  04:17 AM To:Hilda Delgado
Subject:

**LIQUOR LIABILITY POLICY DECLARATIONS**



THIS POLICY IS ISSUED BY THE COMPANY NAMED BELOW:

COMPANY NAME:    RSUI Indemnity Company, 650 Elm St. Manchester, NH  03101
(A New Hampshire Stock Company)

BRANCH ADDRESS:    EXECUTIVE OFFICES:

945 EAST PACES FERRY ROAD, SUITE 1800, ATLANTA, GA  30326-1125

| POLICY NO. | NLL001406 | RENEWAL OF |
|---|---|---|

**Named Insured (Licensee) and Address:**
Cazim, Inc.
DBA: Little Rascals

4356 W Belmont
Chicago, IL 60641

**Owner Name and Address:**
Cazim Mustafalic
4356 W Belmont
Chicago, IL 60641

**Producer Name and Address:**
KANE INSURANCE GROUP
4016 N. LINCOLN AVE.
CHICAGO, IL 60618

**Location of Premises:**
4356 W Belmont
Chicago, IL 60641

**Policy Period:**    Effective Date  08/15/06    to    Expiration Date  08/15/07
(12:01 A.M. Standard Time at your Mailing Address above.)

In return for the payment of the premium (this premium may be subject to adjustment), and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.

|  | | |
|---|---|---|
| **Limits of Liability:** | $  300,000 | Aggregate |
|  | $ | Injury, Each Person |
|  | $ | Injury, Each Occurrence |
|  | $ | Injury to Means of Support or Loss of Society, Each Occurrence |
|  | $ | Damage, Each Occurrence |
|  | $  300,000 | Combined Single Limit |

**Classification of Risk:**    Bar Tavern

**Rates:**    See  Progressive Rating Endorsement

| **Premium:** | | | | | (25% Minimum |
|---|---|---|---|---|---|
|  | Premium: | $  1,148 | Minimum Premium | $  287 | Earned Premium) |
|  | Inspection Fee: | $  0 | Deposit Premium | $  1,148 | |
|  | Broker Fee: | $  50 | | | |
|  | Other Charges: | $  0 | | | |
|  | TRIA Premium: | $  0 | | | |
|  | Total: $ | 1,198 | | | |

**Form of Business:**    ☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Corporation    ☐ LLC    Other:

**Forms and Endorsements Forming a Part of This Policy at Inception:** (LLG 30101) (LLG 30201) (LLG 30301) (LLG 30402) (LLG 30411) (RSG 99043) (LLG 30102) (LLG 30602)

**Insured's Representations:** The insured premises will close at or before 2:00 A.M. (3:00 A.M. Sunday) during the policy term of the insurance

THESE DECLARATIONS TOGETHER WITH THE POLICY FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

Authorized Representative

LLG 30001 0905



**RSUI INDEMNITY COMPANY**

# LIQUOR LIABILITY POLICY
## (Illinois)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION IV – DEFINITIONS**, items **M.** and/or **P.**

Other words and phrases that appear in bold have special meaning. Refer to **SECTION IV – DEFINITIONS**.

I.  **COVERAGE AGREEMENTS**

    A.  We will pay those amounts up to the Limit of Liability that **you** become legally obligated to pay as a result of liability imposed upon **you** under the **Liquor Control Act of 1934** for **injury**, **damage** or **injury** to means of support or loss of society. The **injury**, **damage** or **injury** to means of support or loss of society must:

        1.  Be caused by or result from an intoxicated person; and

        2.  Arise out of **your sale** of alcoholic beverages on **your premises**.

    B.  We have the right and will defend any **claim**. We will:

        1.  Do this even if any of the charges of the **claim** are groundless, false or fraudulent;

        2.  Investigate and settle any **claim** as we deem appropriate.

    However, we will have no duty to defend **you** against any **claim** to which this insurance does not apply.

    C.  The **injury**, **damage** or **injury** to means of support or loss of society under this policy must happen on or after the effective date and before the end of the Policy Period shown on the Declarations. Our payment of the Limit of Liability ends our duty to defend.

II.  **EXCLUSIONS**

    This insurance does not apply to:

    A.  **Injury**, **damage** or **injury** to means of support or loss of society of:

        1.  **You**. If **you** are a partnership, this includes **your** partners. If **you** are a corporation, this includes its officers, directors and stockholders.

        2.  **Your employees**, if they become intoxicated while engaged in **your** business.

        This exclusion applies:

            a.  Whether **you** may be liable as an employer or in any other capacity; and

            b.  To any obligation to share damages with or repay someone else who must pay damages because of the **injury**, **damage** or **injury** to means of support or loss of society.

    B.  **Injury**, **damage** or **injury** to means of support or loss of society that was expected or intended from **your** standpoint. This exclusion does not apply to **injury**, **damage** or **injury** to means of support or loss of society resulting from the use of reasonable force to protect persons or property.

    C.  **Injury**, **damage** or **injury** to means of support or loss of society arising out of actual or alleged involvement in any way:

        1.  **Anti-trust Law** violation; or

        2.  Agreement of conspiracy to restrain trade.

D. **Injury, damage** or **injury** to means of support or loss of society arising out of the **sale** of alcoholic beverages while any license to do so, required by law, is suspended, expired, cancelled or revoked.

E. **Injury, damage** or **injury** to means of support or loss of society arising out of actual, alleged or threatened **pollution**.

This exclusion does not apply to **injury** or **damage** caused by the heat, smoke or fumes from a **hostile fire**.

F. **Injury, damage** or **injury** to means of support or loss of society arising out of the intoxication of **your employee** while engaged in **your** business.

G. **Damage** to property:

   1. That **you** own, rent or occupy, hold for **sale** or which has been given to **you** or **your employee** for storage or safekeeping.

   2. Over which **you** or **your employee** is exercising physical control.

H. Any amounts **you** or any entity must pay under any unemployment or workers' compensation, disability benefits or other similar law.

I. **Injury, damage** or **injury** to means of support or loss of society to:

   1. Any **employee** of **yours** arising out of or in the course of employment by **you**; or

   2. The spouse, child, parent, brother or sister of that **employee** as a consequence of item I. 1. above.

J. **Injury, damage** or **injury** to means of support or loss of society or other loss due to nuclear reaction, radiation, contamination or exposure to the **hazardous properties** of **nuclear material**, regardless of cause.

K. Any punitive, exemplary or other multiplication of amount payable under this policy, imposed by law. If a **claim** is brought against **you** seeking both compensatory and punitive or exemplary damages, we will defend **you** against such **claim**. However, we will not pay the punitive or exemplary damages portion of any award against **you**.

## III. LIMITS OF LIABILITY

A. The Limit of Liability stated on the Declarations is the most we will pay regardless of the number of:

   1. Insureds;

   2. **Claims** brought; or

   3. Persons or entities that sustain **injury, damage** or **injury** to means of support or loss of society.

B. The Aggregate Limit is the most we will pay for **injury, damage, injury** to means of support or loss of society arising from any one of **your premises**.

C. If the Limits of Liability on the Declarations are separate limits, the following apply, subject to paragraph III. B. above:

   1. **Injury** - The Limit of Liability stated for "Each Person" is our Limit of Liability for all **injury** sustained by one person arising out of the intoxication of any one person. The Limit of Liability stated for "Each Occurrence" is our total Limit of Liability for all **injury** sustained by two or more persons arising out of the intoxication of any one person.

   2. **Injury** to Means of Support or Loss of Society - The Limit of Liability stated for "Each Occurrence" is our total Limit of Liability for all **injury** to means of support or loss of society sustained by one or more persons arising out of the intoxication of any one person.

   3. **Damage** - The Limit of Liability stated for "Each Occurrence" is our total Limit of Liability for all damages sustained by one or more persons arising out of the intoxication of any one person.

D. If the Limits of Liability stated on the Declarations are Combined Single Limits, subject to paragraph III. B. above, our total Limit of Liability for **injury**, **injury** to means of support or loss of society and **damage**, because of each occurrence, will not exceed the Limit of Liability stated for **injury**, **injury** to means of support and loss of society and **damage** combined.

E. **Claim expenses** are in addition to our Limits of Liability and are not included in the Limits of Liability.

F. In addition to the Limits of Liability, we will also pay:

    1. Premiums for bonds to release attachments, or appeal bonds, up to the Limits of Liability. We have no obligation to apply for or furnish such bonds.

    2. Reasonable expenses **you** incur at our request. This includes actual loss of wages or salary, but not other income, up to a maximum of $25 per day, because of attendance at hearings or trials.

G. The Limits of Liability apply to the Policy Period shown on the Declarations and to any period of time to which the expiration is extended after issuance of this policy.

## IV. DEFINITIONS

A. **Anti-trust Law** means those laws listed in:

    1. Title 15, Section 12, of the United States Code;

    2. The Federal Trade Commission Act; and

    3. Any similar state law.

B. **Claim** means the receipt of a demand for money or services naming **you** and alleging **injury**, **damage** or **injury** to means of support or loss of society.

C. **Claim expenses** means:

    1. Fees charged by an attorney we designate; and

    2. All other fees, costs and expenses which result from the investigation, adjustment, defense and appeal of a **claim**.

These expenses must be incurred by us or by **you** with our prior consent.

**Claim expenses** do not include salaries of our regular employees.

D. **Damage** means:

    1. Physical **injury** to tangible property, including all resulting loss of use of that property; or

    2. Loss of use of tangible property that is not physically injured.

E. **Employee** includes leased and temporary workers, but does not include independent contractors.

F. **Hazardous properties** include radioactive, toxic or explosive properties of **nuclear material**.

G. **Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

H. **Injury** means bodily injury, sickness or disease, or mental or emotional stress sustained by a person, including death from any of these at any time.

I. **Liquor Control Act of 1934** means 235 ILCS5/1-1 et. seq. or any amendments or revisions thereto.

J. **Licensee** means a person or entity duly licensed to engage in the business of selling alcoholic beverages at **your premises**. Such **sale** must comply with any applicable statutes, regulations or ordinances in force at the location of **your premises**.

K. **Named Insured** means the entity shown as the Named Insured (Licensee) on the Declarations.

L. **Nuclear material** means "source material", "special nuclear material" or "by-product material". These terms have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

M. **Owner** means the person or entity, who owns, leases, manages or permits the occupancy of **your premises** by a **licensee** shown as the **Owner** on the Declarations. This may be:

1. In a fiduciary capacity;
2. As a real estate management agent;
3. As a holder of legal and equitable title under a land trust; or
4. In a capacity other than those specified in items M. 1. - 3. above.

Owner does not include a person or organization engaged in the sale of alcoholic beverages at your premises.

N. Pollution means the discharge, dispersal, release or escape of smoke, vapors, soot, fumes acids, alkalis, toxic chemicals, liquids or gases, waste material or the irritants, contaminants or pollutants into or upon land, air or water, and includes any loss, cost or expenses arising out of any governmental direction or Claim or request made by any other individual or entity that you test for monitor, clean up, remove, contain, treat, detoxify or neutralize any form of pollutant.

O. Sale means the sale, gift or other service of an alcoholic beverage.

P. You or your means:

1. The Named Insured; or
2. Any of your executive officers, partners, stockholders or members of the Board of Directors, trustees or governors or employees, but only while acting within the scope of their duties as such.

Q. Your premises means:

1. The location described on the Declarations; and
2. Approaches immediately adjoining such premises.

V. CONDITIONS

A. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the Policy Period and up to three (3) years afterward.

B. Territory

This insurance applies to the sale of alcoholic beverages in the state of Illinois.

C. Premium

1. All premium charges under this policy will be computed according to our rules and rating plans which apply at the time of the change.
2. Premiums for this policy are payable to us in advance. They may be paid to us or our authorized representative. The first premium is due on the inception date of this policy.
3. If any premium is shown as a Deposit Premium, it will be credited to the amount of earned premium due at the end of the Policy Period. At the end of each Policy Period, the earned premium will be computed. If you have paid us less than this amount, you will pay us the difference as soon as we notify you. If you have paid more than this amount, we will refund the excess to you.
4. You must keep accurate records of the information we will need to compute your premium. You agree to send us these records at the end of each Policy Period, or at any other time, if requested.
5. The first Named Insured shown on the Declarations:
   a. Is responsible for the payment of premiums; and
   b. Will be the payee for any return premiums we pay.

D. Your Duties

If there is a claim or you reasonably think there will be, you must do the following:

1. Notify us in writing as soon as possible;

2. Specify the names and addresses of the injured person(s) and any witnesses. Provide us with information on the time, place and nature of the event;

3. Immediately forward all documents which **you** receive in connection with the **claim** to us;

4. Fully cooperate with us or our designee in the making of settlements, the conduct of suits or other proceedings, and enforcing any right of contribution or indemnity against another who may be liable to **you** because of **injury, damage or injury** to means of support or loss of society, or other loss or expense. **You** must attend hearings and trials, assist in securing and giving evidence and obtaining the attendance of witnesses; and

5. Refuse, except at **your** own cost, to voluntarily make any payment, assume any obligation or incur any expense.

E. **Separation of Insureds**

This insurance applies separately to each of **you** against whom a **claim** is brought except with respect to:

1. The Limits of Liability; and

2. Any of **your** duties as the first **Named Insured** on the Declarations.

F. **Liberalization**

If we adopt revised provisions for this policy:

1. Within forty-five (45) days prior to the beginning of this policy; or

2. During the Policy Period,

in order to give, without additional premium broader insurance, this policy will be construed in accordance with the broader provisions.

G. **Other Insurance**

If other valid and collectible insurance is available to the Insured for a loss we cover under this policy, our obligations are limited as follows:

1. Primary Insurance

   This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all other insurance by the method described in G. 2. below.

2. Method of Sharing

   We will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

H. **Rights of Recovery**

If we make any payment, we are entitled to recovery what we paid from other parties. Any person to or for whom we make payment must transfer to us their rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize those rights.

I. **Legal Action Limitation**

**You** may not bring any legal action against us concerning this policy until:

1. **You** have fully complied with all the provisions of this policy; and

2. The amount of **your** obligation to pay has been decided. Such amount can be set by judgment against **you** after actual trial or by written agreement between **you**, us and the claimant.

Any entity or its legal representative is entitled to recover under this policy after they have secured a judgment or written agreement. Recovery is limited to the extent of the insurance afforded by this policy. No entity has any right under this policy to include us in any action against **you** to determine **your** liability, nor will we be brought into such an action by **you** or **your** legal representative.

J.  **Bankruptcy**

If **you** or **your** estate becomes bankrupt or insolvent, it does not change any of **our** obligations under this policy.

K.  **Changes**

Notice to any of our agents or knowledge possessed by any such agent or any other person will not act as a waiver or change in any part of this policy.  It also will not prevent us from asserting any rights under the provisions of this policy.  None of the provisions of this policy will be waived, changed or modified except by written endorsement issued to form a part of this policy.

L.  **Transfer of Interest**

**You** must first obtain our written consent to transfer or assign this policy.  If **you** die, the policy will continue for the remaining part of the policy term; first, for the benefit of **your** legal representative while acting within the duties as such, and second, for the benefit of anyone having proper temporary custody of **your** property until a legal representative is appointed.

M.  **Inspections and Surveys**

We have the right, but are not obligated to:

1.  Make inspections and surveys at any time;

2.  Give **you** reports on the conditions we find;

3.  Recommend changes; or

4.  Give loss prevention advice.

Any inspections, surveys, reports, recommendations or advice relate only to insurability and the premiums to be charged.  We do not:

a.  Make safety inspections;

b.  Undertake to perform the duty of any entity to provide for the health or safety of workers or the public; or

c.  Warrant that conditions:

1)  Are safe or healthful; or

2)  Comply with laws, regulations, codes or standards.

These provisions apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports, recommendations or gives loss prevention advice.

N.  **Cancellation and Nonrenewal**

The terms and conditions for Cancellation and Nonrenewal are contained in Illinois – Cancellation and Nonrenewal Conditions, LLG 30301 attached to and made a part of this policy at inception.  Please read this endorsement carefully.

O.  **Conformity to Statute**

If the limitation provided under Section 235.5/6-21 as published in the Illinois Administrative Code is raised during the policy period, the Limits of Insurance provided on the Declarations are hereby amended to conform to that statute.

P.  **Representatives**

By accepting this policy, **you** agree:

1.  The statements on the Declarations and Application for insurance are:

a.  Accurate and complete; and

b.  Based upon representations **you** made to us; and

2.  We have issued this policy in reliance upon **your** representations.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# ILLINOIS - COMMON LAW LIQUOR LIABILITY
# (LIMITED – OUT OF STATE INJURY OR DAMAGE)

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance applies to claims arising out of the sale of alcoholic beverages in Illinois, based upon common law, when the **injury** or **damage** happens outside of Illinois.

The Limits of Liability applicable to such **injury** or **damage** are:

| | | |
|---|---|---|
| $ | $300,000 | Aggregate Limit |
| $ | | Injury, Each Person |
| $ | | Injury, Each Occurrence |
| $ | | Injury to Means of Support or Loss of Society, Each Occurrence |
| $ | | Damage, Each Occurrence |
| $ | $300,000 | Combined Single Limit |

Our total Limit of Liability under this endorsement and under the policy to which this endorsement is attached together shall not exceed the applicable limits stated on the Declarations of the policy.

All other terms and conditions under this policy remain unchanged.

LLG 30201 0905

*This Endorsement Changes The Policy. Please Read It Carefully.*

# ILLINOIS
## CANCELLATION AND NONRENEWAL CONDITIONS

This endorsement modifies insurance provided under the following:

### LIQUOR LIABILITY POLICY

**A. CANCELLATION**

1. The first **Named Insured** shown on the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to **you** written notice stating the reason for cancellation. If we cancel:

   a. For nonpayment of premium, we will mail the notice at least ten (10) days prior to the effective date of cancellation.

   b. For a reason other than nonpayment of premium, we will mail the notice at least:

      (1) Thirty (30) days prior to the effective date of cancellation if the policy has been in effect for sixty (60) days or less.

      (2) Sixty (60) days prior to the effective date of cancellation if the policy has been in effect for more than sixty (60) days.

3. If this policy has been in effect for more than sixty (60) days, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification of the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first **Named Insured** any premium refund due. If we cancel, the refund will be pro rata. If the first **Named Insured** cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail **you** and **your** agent or broker written notice, stating the reason for nonrenewal, at least sixty (60) days before the end of the policy period. If we offer to renew or continue and **you** do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that **you** have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and **you** obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to **you**, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

All other terms and conditions under this policy remain unchanged.

---

    Includes copyrighted material of ISO Properties, Inc., 2004 with its permission.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# LIQUOR LIABILITY
# PROGRESSIVE RATING

This endorsement modifies insurance provided under the following:

**LIQUOR LIABILITY POLICY**

The rate per $100 of estimated annual receipts shall apply as follows:

Classification: Bar Tavern

| Receipts: | $ 40000 | Classification Code: 58161 | | | |
|---|---|---|---|---|---|
| | | First | $ 50000 | Premium | $ 1148 |
| | | Second | $ | Premium | $ |
| | | Over | $ | Premium | $ |

All other terms and conditions of this policy remain unchanged.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MINIMUM EARNED PREMIUM

This endorsement modifies insurance provided under the following:

**LIQUOR LIABILITY POLICY**

It is a condition of this policy, that in the event of cancellation by the insured, the premium shown on the policy shall be subject to a 25% minimum earned premium developed as a percentage of the total advance premium, the audit premium of the short rate cancellation, if applicable, whichever is higher.

LLG 30411 0905

RSUI INDEMNITY COMPANY

## *IMPORTANT NOTICE*

IMPORTANT INFORMATION TO ILLINOIS POLICYHOLDERS

RIGHT TO FILE A COMPLAINT

KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

**PROBLEMS WITH YOUR INSURANCE?** – This notice is to advise you that should any complaints arise regarding this insurance you may contact the following:

RSUI Group, Inc.
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326-1160

404-231-2366

You can also contact the **DEPARTMENT OF INSURANCE** by writing to:

Illinois Department of Insurance
Consumer Division or Public Services Section
Springfield, IL  62767

RSG 99043 0604

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – ASSAULT AND BATTERY

This endorsement modifies insurance provided under the following:

**LIQUOR LIABILITY POLICY**

The following items are added to Section II EXCLUSIONS:

1. **Claims** to recover damages arising from actual or alleged **assault** and/or **battery** and **claims** for false arrest, false detention or false imprisonment, where such false arrest, false detention or false imprisonment is connected to or arises in the sequence of events related to actual or alleged **assault** and/or **battery**, are excluded from coverage, and we are under no duty to defend or indemnify the insured regardless of the degree of culpability or intent and without regard to:

   a. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, the insured's officers, **employees**, agents or servant; or by any other person lawfully or otherwise on, at or near premises owned or occupied by the insured; or by any other person;

   b. The alleged failure or fault of the insured, or the insured's officers, **employees**, agent or servants, in the hiring, supervision, retention or control of any person, whether or not an officer, **employee**, agent or servant of the insured;

   c. The alleged failure or fault of the insured, or the insured's officers, **employees**, agents or servants, to attempt to prevent, bar or halt any such conduct.

2. Additionally, this exclusion applies to any **claim** by any other person, firm or organization, asserting rights derived from, or contingent upon, any person asserting a **claim** excluded under paragraphs **1.a.** through **1.c.** above. In addition, this endorsement specifically excludes from coverage **claims** for:

   a. Emotional distress, or for loss of society, services, consortium and/or income;

   b. Reimbursement for expenses (including but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm or organization;

   c. Any obligation to share damages with or repay someone who must pay damages because of the **injury**;
   all arising from actual or alleged **assault** and/or **battery**.

3. The following items are added to Section IV DEFINITIONS:

   a. **Assault** means the apprehension of harmful or offensive contact between or among two or more persons by threats through words or deeds.

   b. **Battery** means the harmful or offensive contact between or among two or more persons.

All other terms and conditions under this policy remain unchanged.

LLG 30602 0905